**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PETEDGE, INC.,

                   Plaintiff,

       -against-

VIJAY GARG,

                   Defendant.

Case No: 15-cv-9606 (GHW)

---

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

MANDEL BHANDARI LLP
Rishi Bhandari
Evan Mandel
Donald Conklin
80 Pine Street, 33rd Floor
New York, NY 10005
T:  (212) 269-5600
F:  (646) 964-6667

*Attorneys for Vijay Garg*

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ........................................................................ 1

II.     FACTS ..................................................................................................... 2

    A. The Agreement and the Alleged Breach ................................................ 2

    B. The Instant Claims and Garg's Alleged Involvement ............................ 4

    C. The Procedural History of the Case ...................................................... 5

III.     CHOICE OF LAW ................................................................................... 5

IV.     ARGUMENT ........................................................................................... 6

    A. PetEdge Does Not Plead Any Claims With Particularity ...................... 6

    B. The Fraud and Negligent Misrepresentation Claims Must be Dismissed ........................ 8

      1. The Merger Clause Bars the Fraud and Negligent Misrepresentation Claims ............. 9

      2. The Alleged Misrepresentations Are Non-Actionable Opinions and Puffery ........... 10

      3. Garg Had No Duty To Speak ........................................................ 11

      4. PetEdge Fails to Allege that Garg Acted With Fraudulent Intent ............................. 12

    C. PetEdge's Negligent Misrepresentation Claim Fails ........................... 13

    D. PetEdge's Breach of Fiduciary Duty Claim Fails ............................... 15

      1. The Agreement Itself Precludes a Fiduciary Duty .............................. 15

      2. TPC's Expertise Does Not Create a Fiduciary Duty .......................... 17

V.     CONCLUSION ......................................................................................... 18

## TABLE OF AUTHORITIES

### Cases

*3Com Corp. v. Capital 4, Inc.*,
   626 F. Supp. 2d 428 (S.D.N.Y. 2009) .................................................................. 10

*Acito v. IMCERA Group, Inc.*,
   47 F.3d 47 (2d Cir. 1995) ...................................................................................... 12

*American Fin. Int'l Group-Asia LLC v. Bennett*,
   No. 05 Civ. 8988 (GEL), 2007 U.S. Dist. LEXIS 43508 (S.D.N.Y. June 14, 2007) ................ 16

*Amusement Indus. v. Stern*,
   786 F. Supp. 2d 758 (S.D.N.Y. 2011) ................................................................... 14

*Anstalt v. New Generation Biofuels, Inc.*,
   No. 13-CV-5586 (VEC), 2014 U.S. Dist. LEXIS 161472 (S.D.N.Y. Nov. 18, 2014) .............. 14

*Atkins Nutritionals, Inc. v. Ernst & Young, LLP*,
   301 A.D.2d 547 (N.Y. 2d Dept. 2003) ................................................................... 15

*Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*,
   57 F.3d 146 (2d Cir. 1995) ........................................................................... 11, 14

*Boley v. Pineloch Assocs.*,
   700 F. Supp. 673 (S.D.N.Y. 1988) ....................................................................... 17

*Calvin Klein Trademark Trust v. Wachner*,
   123 F. Supp. 2d 731 (S.D.N.Y. 2000) ................................................................... 15

*Dunkin' Donuts Inc. v. Got-A-Lot-A-Dough, Inc.*,
   04-CV-4100 (DRH) (MLO), 2006 U.S. Dist. LEXIS 90965 (E.D.N.Y. Dec. 18, 2006) .......... 12

*Dupont Flooring Sys. v. Discovery Zone, Inc.*,
   No. 98 Civ. 5101 (SHS), 2004 U.S. Dist. LEXIS 13149 (S.D.N.Y. July 13, 2004) ................ 11

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011) ..................................................................... 7

*Frutico, S.A. v. Bankers Trust Co.*,
   833 F. Supp. 288 (S.D.N.Y. 1993) ....................................................................... 16

*Globalnet Financial.com, Inc. v. Frank Crystal & Co.*,
   449 F.3d 377 (2d Cir. 2006) ................................................................................. 5

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
   227 F.3d 8 (2d Cir. 2000) ................................................................................... 14

*In re Allstate Ins. Co., (Stolarz)*,
   81 N.Y.2d 219 (N.Y. 1993) ................................................................................. 6

*In re Morgan Stanley & Van Kampen Mut. Fund Secs. Litig.*,
   No. 03 Civ. 8208 (RO), 2006 U.S. Dist. LEXIS 20758 (S.D.N.Y. Apr. 18, 2006) ................. 13

*Jewelamerica Inc. v. Frontstep Solutions Group*,
   No. 02 Civ. 1328 (RO), 2002 U.S. Dist. LEXIS 21296 (S.D.N.Y. Oct. 31, 2002)................... 14

*JHW Greentree Capital, L.P. v. Whittier Trust Co.*,
   05 Civ. 2985 (HB), 2005 U.S. Dist. LEXIS 27156 (S.D.N.Y. Nov. 10, 2005)........................ 12

*Jus Punjabi, LLC v. Get Punjabi, Inc.*,
   No. 1:14-cv-3318-GHW, 2015 U.S. Dist. LEXIS 66006 (S.D.N.Y. May 20, 2015)................. 6

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) ................................................................................. 13

*Kearins v. Panalpina, Inc.*,
   No. 10-CV-01198 (RER), 2013 U.S. Dist. LEXIS 123773 (E.D.N.Y. Aug. 28, 2013)........... 11

*Lanza v. Drexel & Co.*,
   479 F.2d 1277 (2d Cir. 1973) ............................................................................... 12

*Lasker v. New York State Elec. & Gas Corp.*,
   85 F.3d 55 (2d Cir. 1996) ..................................................................................... 11

*Lundy v. Catholic Health Sys.*,
   711 F.3d 106 (2d Cir. 2013) ................................................................................... 6

*Matsumura v. Benihana Nat'l*,
   542 F. Supp. 2d 245 (S.D.N.Y. 2008) ...................................................................... 7

*Mechigian v. Art Capital Corp.*,
   612 F. Supp. 1421 (S.D.N.Y. 1985) ........................................................................ 17

*Meisel v. Grunberg*,
   651 F. Supp. 2d 98 (S.D.N.Y. 2009) ............................................................... 7, 14, 15

*Merton Co. v. PepsiCo Inc.*,
   874 F. Supp. 634 (S.D.N.Y. 1995) ......................................................................... 14

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
   165 F. Supp. 2d 514 (S.D.N.Y. 2001) ..................................................................... 11

*Ningbo Prods. Imp. & Exp. Co. v. Eliau*,
   No. 11 Civ. 650 (PKC), 2011 U.S. Dist. LEXIS 125789 (S.D.N.Y. Oct. 31, 2011)................. 7

*Primedia Enthusiast Publication Inc. v. Opinion & Ashton Int'l Media, Inc.*,
　No. 02 Civ. 9997 (HB), 2003 U.S. Dist. LEXIS 16727 (S.D.N.Y. Sept. 26, 2003)................. 10

*Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*,
　893 F. Supp. 285 (S.D.N.Y. 1995) ........................................................................... 15

*Reynolds v. Lifewatch, Inc.*,
　No. 14-CV-3575 (KMK), 2015 U.S. Dist. LEXIS 133130 (S.D.N.Y. Sept. 29, 2015) ............. 8

*Rombach v. Chang*,
　355 F.3d 164 (2d Cir. 2004) ..................................................................................... 7

*Schwalb v. Kulaski*,
　29 A.D.3d 563 (N.Y. 2d Dept. 2006) ........................................................................ 11

*Shields v. Citytrust Bancorp, Inc.*,
　25 F.3d 1124 (2d Cir. 1994) ..................................................................................... 13

*Simms v. Biondo*,
　816 F. Supp. 814 (E.D.N.Y. 1993) ........................................................................... 10

*Suthers v. Amgen Inc.*,
　441 F. Supp. 2d 478 (S.D.N.Y. 2006) ...................................................................... 17

*Sveaas v. Christie's, Inc.*,
　No. 10 Civ. 4263 (LTS), 2011 U.S. Dist. LEXIS 49118 (S.D.N.Y. Apr. 20, 2011)................. 16

*Teachers Ins. & Annuity Ass'n of Am. v. CRIIMI MAE Servs. Ltd.*,
　No. 06 Civ. 0392 (LAK), 2007 U.S. Dist. LEXIS 101862 (S.D.N.Y. Sept. 7, 2007)............... 16

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
　551 U.S. 308 (2007) ................................................................................................ 13

*Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*,
　351 Fed. Appx. 472 (2d Cir. 2009) ........................................................................... 15

**Rules**

Fed. R. Civ. P. 11 ....................................................................................................... 8

Fed. R. Civ. P. 9 ................................................................................................ 1, 6, 12, 14

iv

I.      **PRELIMINARY STATEMENT**

In October 2012, PetEdge – a distributor of pet supplies – and The Principal Consulting, Inc. ("TPC") entered into a contract for TPC to help PetEdge implement certain enterprise software that PetEdge had licensed from a third party.  PetEdge had licensed the software prior to seeking any advice from anyone at TPC.  The software at issue was so deeply flawed that it was discontinued within one year of its release.  Unsurprisingly, PetEdge was unhappy with the software that it licensed.  PetEdge has asserted claims against TPC in an arbitration before the American Arbitration Association.  Here, PetEdge claims that a TPC employee, Defendant Vijay Garg ("Garg"), is liable for fraud, negligent misrepresentation, and breach of fiduciary duty because TPC employees other than Garg allegedly misrepresented TPC's experience with the enterprise software and PetEdge's catalogue business model.

PetEdge does not claim that Garg made any misrepresentations to it whatsoever.  In fact, the First Amended Complaint ("FAC," Exhibit 1 to the accompanying Declaration of Evan Mandel) does not allege that Garg and PetEdge ever communicated.  Instead, PetEdge asserts in summary fashion that Garg "orchestrated," "directed," "approved," and had "knowledge" of the alleged misrepresentations.  The First Amended Complaint must be dismissed for numerous reasons.

First, where fraud, negligent misrepresentation, and breach of fiduciary duty claims are all premised on the same underlying facts, they are governed by Fed. R. Civ. P. 9's heightened pleading standards.  Here, PetEdge's three claims are all premised upon identical misrepresentations, and the FAC fails to meet the heightened pleading standards because it provides zero factual allegations concerning Garg's involvement in the supposed misrepresentations.

Second, the fraud and negligent misrepresentation claims fail for numerous reasons, including that: (a) they are barred by the merger clause contained in the PetEdge-TPC agreement, (b) they are premised entirely on statements that constitute non-actionable opinions or puffery, and (c) they assert claims based on omissions despite the fact that Garg had no duty to speak.

Third, the negligent misrepresentation claim fails because Garg and PetEdge did not have a "special relationship." Similarly, the breach of fiduciary duty claim must be dismissed because Garg did not owe PetEdge a fiduciary duty.

## II.   FACTS

### A.   The Agreement and the Alleged Breach

PetEdge is a Massachusetts-based supplier of wholesale pet grooming supplies and discount pet products.[1] TPC is a New Jersey-based provider of computer consulting services, with three offices in the United States – in New Jersey, Pennsylvania and Texas – as well as offices in the United Kingdom and India.[2]

At some point in 2012, PetEdge began evaluating potential vendors to help it implement certain SAP software it had elected to license. (FAC ¶ 5.) Included in the software PetEdge licensed from SAP were (i) a short-lived SAP functionality called SAP Web Channel Experience Management (WCEM) that existed for approximately one year, and (ii) SAP's Customer Relationship Management (CRM) functionality. (*Id*.) Because TPC and Garg had zero involvement in PetEdge's decision to license this software, the FAC does not blame Garg for the

---

[1] https://www.petedge.com/zpetedgemain/contentmanagement/home.jsf?wec-appid=PEDM_WEBSHOP_TR&cm=4686.

[2] http://www.tpcus.com/about-us/locations.html.

fact that the software was ineffective and discontinued approximately one year after it was released.

On October 22, 2012, PetEdge and TPC entered into a Master Services Agreement, which incorporated a Statement of Work (the "Agreement," attached to the First Amended Complaint as Exhibit A and attached to the accompanying Mandel Declaration as Exhibit 2). The parties to the Agreement promised that they would remain at arms-length: "TPC enters this Agreement and will remain throughout the term as an independent contractor.  Both parties agree that they are and will not become an employee, partner, agent, or principal of the other party while this Agreement is in effect."  (FAC Ex. A § 5.2.)

TPC represented to PetEdge that it had "the knowledge, experience and Skills to provide the services in a professional and timely manner." (FAC Ex. A § 12.3.)  TPC similarly represented that its "services shall be performed in a timely and professional manner consistent with the highest prevailing industry standards."  (*Id.*)  The Agreement contains a merger clause, stating "no representations, inducements, promises or agreements, orally or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not contained in this Agreement."  (*Id.* § 12.4.)

According to a "Project Requirements" document contained in Exhibit A to the FAC, the Agreement included more than 250 discrete requirements across eight separate categories, including System Integration, Marketing and Promotions, and Order Management.  *Id.* at 19-48 of 48.  Some of these requirements had dozens of sub-requirements.  When the software was implemented, PetEdge purportedly experienced various problems with 21 of the more than 250 enumerated Project Requirements set forth in the attachment to the Agreement.  (FAC ¶ 15.)

B.      **The Instant Claims and Garg's Alleged Involvement**

PetEdge does not allege that it had any communications whatsoever with Garg.  To the contrary, the FAC specifically explains that, at all relevant times, PetEdge communicated with TPC's Brendan O'Malley, Mark Dooley, Sreedhar Sambatur, and Greg Kull.  (FAC ¶¶ 6, 11-12.) The FAC does allege that Garg co-founded TPC and that, at the time the FAC was filed, Garg was TPC's CEO.  (FAC ¶ 3.)

*Fraud and Negligent Misrepresentation.*  In its fraud and negligent misrepresentation claims, PetEdge alleges that, during five communications between August 2012 and October 2012, TPC client executives Brendan O'Malley and Mark Dooley made misrepresentations to PetEdge.  (*Id.* ¶ 18.)  The First Amended Complaint alleges that TPC affirmatively misrepresented (i) its experience implementing SAP's WCEM software, (ii) its "familiarity with PetEdge's catalogue business model," and it omitted to mention that (iii) TPC's "customer base was dwindling," (iv) it "would assign incompetent and inexperienced consultants" to the project, and (v) that its "budget was a wild guess."  (FAC ¶¶ 20-21, 28-30.)

According to the FAC, Garg did not personally make any misrepresentations to PetEdge. Instead, in summary fashion, the FAC imputes knowledge of the alleged fraudulent scheme to Garg:  Garg allegedly "directed," "orchestrated" and "approved" the misrepresentations.  (*E.g.*, FAC ¶ 6.)

*Breach of Fiduciary Duty.*  Despite the lack of communication between Garg and PetEdge, the FAC asserts that "the relationship between PetEdge and Mr. Garg was one of trust and confidence as Mr. Garg was in a superior position, possessed special knowledge, was in a position to exercise influence over PetEdge via TPC and assumed a duty to act in PetEdge's best interest."  (FAC ¶ 38.)  PetEdge claims that Garg breached his fiduciary duty by "failing to act with utmost loyalty on behalf of, and for the benefit of PetEdge."  (*Id.* ¶ 40.)  Although the FAC

does not specify precisely how Garg failed to act with the "utmost loyalty," PetEdge has explained that its breach of fiduciary duty claim is based on the same misrepresentations as its fraud and negligent misrepresentation claims.  (PetEdge 3/18/16 Ltr. (Dkt. #27) at 3, Mandel Decl. Ex. 3.)

###    C.    The Procedural History of the Case

On December 8, 2015, PetEdge sued TPC for breach of contract, fraudulent inducement, negligent misrepresentation and breach of fiduciary duty, and inexplicably included Garg as a defendant in its initial complaint, in his alleged capacity as TPC's CEO.  (Dkt. No. 1.)  TPC and Garg requested a pre-motion conference to discuss its motion to dismiss.  (Garg 2/5/2016 Ltr. (Dkt. # 18), Mandel Decl. Ex. 4.)  Among its reasons for moving to dismiss the initial complaint was the fact that PetEdge had failed to plead any allegations supporting Garg's personal liability for TPC's supposed misrepresentations as part of the sales process.  (*Id.*)

The Court dismissed claims against TPC.  On March 1, 2016, PetEdge filed this First Amended Complaint solely against Garg.  But the First Amended Complaint failed to add any allegations about Garg's involvement in the misrepresentations.

## III.    <u>CHOICE OF LAW</u>

"A federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state." *Globalnet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006).  Because TPC filed this action in New York, New York's choice of law rules apply here.  *See id.* (applying New York choice of law rules in diversity action filed in New York federal court).  Under New York law's "interest analysis," "the law of the jurisdiction having the greatest interest in the litigation will be applied" in tort cases.  *Id.* at 384 (internal quotation marks omitted).

However, the New York Court of Appeals has held that 'the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.'"  *Id.* at 382 (quoting *In re Allstate Ins. Co., (Stolarz)*, 81 N.Y.2d 219, 223 (N.Y. 1993)).  Here, there are three states that arguably have an interest in the dispute: New York (the forum whose law governs the Services Agreement and where PetEdge chose to file suit), New Jersey (where Garg resides and the location where the torts were allegedly committed), and Massachusetts (where PetEdge is located).  As far as we can tell at this stage of the action, the instant motion would be granted under the law of all three states.  As a result, Garg consents to New York law being applied to this motion.  However, in the unlikely event that this motion is denied and a factual investigation indicates that one or more issues in this case might come out differently under different states' laws, Garg reserves his right to seek the application of another state's law.

## IV. <u>ARGUMENT</u>

### A. PetEdge Does Not Plead Any Claims With Particularity

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake."  Where a plaintiff alleges fraud, in their complaint it must (1) "adequately specify the statements [they] claim[ ] were false or misleading"; (2) "give particulars as to the respect in which plaintiff contends the statements were fraudulent"; (3) "state when and where the statements were made"; and (4) "identify those responsible for the statements."  *Jus Punjabi, LLC v. Get Punjabi, Inc.*, No. 1:14-cv-3318-GHW, 2015 U.S. Dist. LEXIS 66006, at *8-9 (S.D.N.Y. May 20, 2015) (Woods, J.) (citing *Lundy v. Catholic Health Sys.*, 711 F.3d 106, 119 (2d Cir. 2013)).

This heightened pleading standard applies not only to PetEdge's fraudulent inducement claim, but to the rest of its claims as well.  Courts hold that where breach of fiduciary duty and negligent misrepresentation claims are "based on the same set of facts upon which plaintiff's fraud claim is grounded," those claims must be pled with particularity pursuant to Rule 9.  *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 108 (S.D.N.Y. 2009); *see also Rombach v. Chang*, 355 F.3d 164, 171-72 (2d Cir. 2004) (Rule 9(b) "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action.… [C]laims that do rely upon averments of fraud [and sound in fraud] are subject to the test of Rule 9(b)."); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 200 (S.D.N.Y. 2011) ("district courts in this Circuit have concluded that [Rule 9(b)] is applicable to negligent misrepresentation claims that are premised on fraudulent conduct"); *Matsumura v. Benihana Nat'l*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008) (holding that the "heightened pleading requirements [of Rule 9(b)] are applicable to *any* claim that 'sounds in fraud'") (emphasis added).

In attempting to hold officers, directors or other individuals acting on behalf of a corporation personally liable for claims sounding in fraud, plaintiffs must also establish ***that particular individual defendant's*** purportedly fraudulent acts or omissions under the heightened pleading standards of Rule 9(b).  *Ningbo Prods. Imp. & Exp. Co. v. Eliau*, No. 11 Civ. 650 (PKC), 2011 U.S. Dist. LEXIS 125789, at *21-22 (S.D.N.Y. Oct. 31, 2011); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) (fraud allegations against directors dismissed because plaintiffs "have not linked the alleged fraudulent statements to particular [d]irectors."); *Reynolds v. Lifewatch, Inc.*, No. 14-CV-3575 (KMK), 2015 U.S. Dist. LEXIS

133130, *49-51 (S.D.N.Y. Sept. 29, 2015) (dismissing claim against individuals who were merely "involved in the decision making" regarding the alleged fraud).

Here, the fraud, negligent misrepresentation, and breach of fiduciary duty claims all allege that Garg was somehow involved in misrepresentations that TPC made to PetEdge. As a preliminary matter, PetEdge essentially conceded at the March 21, 2016 conference in this case that, in violation of Fed. R. Civ. P. 11, it did not have a good basis for believing that Garg "orchestrated," "approved," "directed," or had "knowledge" of the misrepresentations. (FAC ¶¶ 6, 18-22, 27-30, 36, 38-39.) In any event, other than stating in conclusory fashion that Garg did these things, the FAC does not provide any description of Garg's conduct. The FAC does not state when Garg did these things. Nor does the FAC state what Garg did. For instance, did he implicitly "approve" the scheme by not responding to emails describing the scheme, or was it his idea to make the misrepresentations in the first place? The FAC does not identify a single communication that Garg had with anyone – whether it be PetEdge or TPC personnel – regarding the misrepresentations at issue here. By providing only the most conclusory allegation that Garg was *somehow* involved in the misrepresentations, PetEdge has failed to satisfy the Rule 8 pleading standard, let alone Rule 9's heightened pleading standard.

### B. The Fraud and Negligent Misrepresentation Claims Must be Dismissed

The fraud and negligent misrepresentation claims must be dismissed because (a) they are barred by the Agreement's merger clause, (b) they are premised entirely on statements that constitute non-actionable opinions or puffery, and (c) they assert claims based on omissions despite the fact that Garg had no duty to speak.

1.      The Merger Clause Bars the Fraud and Negligent Misrepresentation
        Claims

The Master Services Agreement between PetEdge and TPC contains a strong merger clause that precludes PetEdge's fraudulent inducement and negligent misrepresentation claims, both of which are based on supposed oral misrepresentations.

Essentially, PetEdge claims that TPC misrepresented its experience in implementing SAP's short-lived WCEM software.  (FAC ¶¶ 6-7, 10-11, 20-21, 28-30.)  However, Section 12.3 of the Agreement states that "TPC warrants and represents that it has the knowledge, experience and Skills to provide the services in a professional and timely manner."  The same section also states that TPC "represents and warrants that its services shall be performed in a timely and professional manner consistent with the highest prevailing industry standards and in accordance with Statement(s) of Work attached to this Agreement."  And the merger clause in the very next section of the Agreement states that "no representations, inducements, promises or agreements, orally or otherwise, have been made by any party, *or anyone acting on behalf of any party*, which are not contained in this Agreement."  (Emphasis added.)  As the merger clause encompasses oral representations by "anyone acting on behalf of any party," it encompasses the alleged misrepresentations and omissions by Mr. Garg here.

When these provisions are read together – as they must be – the Agreement unambiguously states that TPC did not make any of the alleged misrepresentations concerning TPC's experience, business, or services.[3]  As a result, the fraud and negligent misrepresentation

---

[3]  The cases cited in PetEdge's March 18, 2016 letter to the Court are not to the contrary, since the merger clauses at issue in those cases did not incorporate the kind of specific warranty at Section 12.3 of the Agreement here that directly contradicts the allegations in PetEdge's complaint. *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993); *Fierro v. Gallucci*, No. 06-CV-5189, 2008 U.S. Dist. LEXIS 38513 (E.D.N.Y. 2008); *Solutia Inc. v. FMC*

claims are barred by the merger clause.  *See, e.g.*, *3Com Corp. v. Capital 4, Inc.*, 626 F. Supp. 2d 428, 430-31 (S.D.N.Y. 2009) (fraud claim fails as a matter of law where parties' agreement contained merger clause and corresponding provision directly contradicted fraudulent inducement claim); *Primedia Enthusiast Publication Inc. v. Opinion & Ashton Int'l Media, Inc.*, No. 02 Civ. 9997 (HB), 2003 U.S. Dist. LEXIS 16727, at *16-20 (S.D.N.Y. Sept. 26, 2003) (same); *Simms v. Biondo*, 816 F. Supp. 814, 823 (E.D.N.Y. 1993) ("This 'merger' clause bars a claim for negligent misrepresentation as a matter of law.").  To nonetheless allow claims based on these alleged representations about WCEM experience to proceed against Garg, when PetEdge expressly waived its right to bring claims against TPC on those same grounds, would vitiate the bargained-for merger clause in the Agreement.

If it was important to PetEdge that TPC had specific experience with WCEM software, PetEdge should have obtained such a representation within the four corners of the agreement. *See Primedia*, 2003 U.S. Dist. LEXIS 16727, at *19 ("Without protection of a specific representation or warranty, Ashton may be said to have willingly assume the business risk that the correspondence of the reported revenue to actual cash flow may not be as represented."). The same is true for the other misrepresentations that PetEdge alleges.

      2.     The Alleged Misrepresentations Are Non-Actionable Opinions and Puffery

The First Amended Complaint alleges that TPC affirmatively misrepresented (i) its experience implementing SAP's WCEM software, (ii) its "familiarity with PetEdge's catalogue business model," and it omitted to mention that (iii) TPC's "customer base was dwindling," (iv) it

---

*Corp.*, 385 F. Supp. 2d 324, 340-41 (S.D.N.Y. 2005); *Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*, 331 F. Supp. 2d 247, 254 (S.D.N.Y. 2004); *Sabo v. Delman*, 3 N.Y.2d 155 (N.Y. 1957).

"would assign incompetent and inexperienced consultants" to the project, and (v) that its "budget was a wild guess." (FAC ¶¶ 6-7, 20-21, 28-30.)

Misrepresentations concerning a party's experience or ability to perform a contract cannot support a claim for fraudulent inducement. *See, e.g., Kearins v. Panalpina, Inc.*, No. 10-CV-01198 (RER), 2013 U.S. Dist. LEXIS 123773, at *22 (E.D.N.Y. Aug. 28, 2013) (granting defendant judgment as a matter of law and holding that "[Plaintiff]'s statements regarding Defendant's industry experience and staffing are not material misrepresentations sufficient to support a finding that Defendant fraudulently induced Plaintiff."); *Dupont Flooring Sys. v. Discovery Zone, Inc.*, No. 98 Civ. 5101 (SHS), 2004 U.S. Dist. LEXIS 13149, at *29, 34 (S.D.N.Y. July 13, 2004) (fraud claim premised upon misrepresentations regarding service provider's experience and ability to perform services fails as a matter of law); *Schwalb v. Kulaski*, 29 A.D.3d 563, 564 (N.Y. 2d Dept. 2006); *see also Lasker v. New York State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir. 1996) ("[B]road, general statements [amount to] precisely the type of 'puffery' that this and other circuits have consistently held to be inactionable"); *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 530 (S.D.N.Y. 2001) ("commercial puffery" and other sales language "is not a misrepresentation").

### 3.     Garg Had No Duty To Speak

Garg is not liable for fraudulent concealment because he had no duty to speak. *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995) (claim for fraudulent concealment under New York law requires proof that the defendant had a duty to disclose material information).

Indeed, Garg had no affirmative obligation to disclose any information to PetEdge. *Dunkin' Donuts Inc. v. Got-A-Lot-A-Dough, Inc.*, 04-CV-4100 (DRH) (MLO), 2006 U.S. Dist.

LEXIS 90965, at *16-17 (E.D.N.Y. Dec. 18, 2006) (dismissing fraudulent concealment claim where complaint failed to allege an obligation to speak).  The First Amended Complaint's vague averments that Garg and TPC "possessed superior knowledge, not readily available to PetEdge and knew that PetEdge was relying on mistaken information" do not establish a duty to speak on behalf of TPC's CEO, individually.  New York courts hold that corporate officers and directors do not have a duty to speak where they were not involved in communications with the party claiming to have been misled by silence.  *See JHW Greentree Capital, L.P. v. Whittier Trust Co.*, 05 Civ. 2985 (HB), 2005 U.S. Dist. LEXIS 27156, at *25 (S.D.N.Y. Nov. 10, 2005) (dismissing fraud claims against corporate director on grounds that director had no duty to speak since "Plaintiffs have not alleged that [director defendant] was involved in the negotiations involving the merger, nor that she had any communications with plaintiffs at all."); *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1289 (2d Cir. 1973) ("A director [who is a] non-participant in the transaction[] owes no duty to insure that all material, adverse information is conveyed to prospective purchasers of the stock of the corporation on whose board he sits.").  Here, the FAC does not allege that Garg had any involvement in the communications between TPC and PetEdge and, as a result, he had no duty to speak.

4.    PetEdge Fails to Allege that Garg Acted With Fraudulent Intent

Rule 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  However, plaintiffs claiming fraud "must allege facts that give rise to a strong inference of fraudulent intent."  *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995).  In order to raise such an inference, "a plaintiff may either (1) allege facts showing both a motive for committing fraud and a clear opportunity for doing so, or (2) identify circumstances indicating conscious or reckless misbehavior by the defendants."  *Shields*

*v. Citytrust Bancorp*, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).  A "strong inference" of scienter is one that is not merely plausible, but "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). "To determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court ... must consider, not only inferences urged by the plaintiffs … but also competing inferences rationally drawn from the facts alleged." *Id.*

PetEdge has not alleged facts or circumstances sufficient to raise an inference of scienter, or any concrete and personal benefit to Garg himself resulting from the fraud.  At most, PetEdge alleges that Garg had a "scheme to obtain a million-dollar contract to upgrade PetEdge's computer system."  (FAC ¶ 6.)  Even if construed liberally and taken as true, that allegation fails to demonstrate scienter, since "allegations that a defendant stands to gain economically from fraud do not satisfy the heightened pleading requirements of Rule 9(b)." *In re Morgan Stanley & Van Kampen Mut. Fund Secs. Litig.*, No. 03 Civ. 8208 (RO), 2006 U.S. Dist. LEXIS 20758, at *41 (S.D.N.Y. Apr. 18, 2006); *see also Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (in order to plead a motive and opportunity to commit the alleged fraud, plaintiffs must allege "a concrete and personal benefit to the individual defendants resulting from the fraud. … Motives that are generally possessed by most corporate directors and officers do not suffice.").

Because PetEdge identifies no other motivation for the alleged fraud here other than TPC's desire to do business with PetEdge and no direct personal benefit to Garg himself, it fails to plead scienter and, therefore, fails to state a claim against Garg for this reason as well.

### C.    PetEdge's Negligent Misrepresentation Claim Fails

Under New York law, the elements of a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the

information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.  *Amusement Indus. v. Stern*, 786 F. Supp. 2d 758, 778 (S.D.N.Y. 2011) (quoting *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)).  As PetEdge's negligent misrepresentation claims are "based on the same set of facts upon which plaintiff's fraud claim is grounded," they must be pled with particularity pursuant to Rule 9.  *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 108 (S.D.N.Y. 2009).

Courts routinely dismiss pleadings that fail to plead the existence of a "special relationship."  *E.g.*, *Amusement Indus.*, 786 F. Supp. 2d at 778; *see also Anstalt v. New Generation Biofuels, Inc.*, No. 13-CV-5586 (VEC), 2014 U.S. Dist. LEXIS 161472, at *50-52 (S.D.N.Y. Nov. 18, 2014) (dismissing negligent misrepresentation claim because complaint did not allege defendant and plaintiff had direct contact necessary to establish a "special relationship"); *Merton Co. v. PepsiCo Inc.*, 874 F. Supp. 634, 639 (S.D.N.Y. 1995) ("two introductory meetings followed by nebulous conversations did not as a matter of law create a special relationship").

The FAC provides no basis to find that a special relationship arose between Garg and PetEdge, as it does not allege any direct contact between Garg and PetEdge at all.  The law is clear that a special relationship did not even arise between TPC and PetEdge, two sophisticated parties that entered into an arm's length business transaction.  *E.g.*, *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 158 (2d Cir. 1995).  Consultants like TPC who are hired to implement software do not have a special relationship with their customers as a matter of law.  *See Jewelamerica Inc. v. Frontstep Solutions Group*, No. 02 Civ. 1328 (RO), 2002 U.S. Dist. LEXIS 21296, at *7-8 (S.D.N.Y. Oct. 31, 2002)

-14-

(dismissing negligent misrepresentation claim against company hired to install software because "[n]othing here indicates that the parties were anything more than arms-length parties to a contract and as such [had] no special relationship."); *Atkins Nutritionals, Inc. v. Ernst & Young, LLP*, 301 A.D.2d 547, 548 (N.Y. 2d Dept. 2003) (consultant hired to implement software does not possess "special relationship" as a matter of law).

**D.     PetEdge's Breach of Fiduciary Duty Claim Fails**

PetEdge claims that Garg – not TPC – owed it a fiduciary duty.  (FAC ¶¶ 35-40; Mandel Decl. Ex. 4 at 3 ("PetEdge is asserting that Mr. Garg, not TPC, breached a fiduciary duty.")

**1.     The Agreement Itself Precludes a Fiduciary Duty**

In New York, the elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) knowing breach of that duty; and (3) damages resulting from the breach. *See Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 Fed. Appx. 472, 474 (2d Cir. 2009).  As discussed above, this claim must be pled with particularity pursuant to Rule 9.  *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 108 (S.D.N.Y. 2009).

Under New York law, where the parties' contract forms the foundation and boundary of their relationship, fiduciary responsibilities have not attached.  *Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*, 893 F. Supp. 285, 289 (S.D.N.Y. 1995); *see also Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731, 733-34 (S.D.N.Y. 2000) ("parties to a commercial contract do not ordinarily bear a fiduciary relationship to one another unless they specifically so agree").

Here, the Agreement is both "the foundation and boundary of" the relationship between TPC and PetEdge, and by its terms expressly *precludes* finding a fiduciary duty here.  Section 5.2 of the Agreement provides that "TPC enters this Agreement and will remain throughout the

term as an independent contractor.  Both parties agree that they are and will not become an employee, partner, agent, or principal of the other party while this Agreement is in effect."  As a result, TPC did not have a fiduciary relationship with PetEdge.  *See Teachers Ins. & Annuity Ass'n of Am. v. CRIIMI MAE Servs. Ltd.*, No. 06 Civ. 0392 (LAK), 2007 U.S. Dist. LEXIS 101862, at *2-3 (S.D.N.Y. Sept. 7, 2007), *aff'd*, 481 Fed. Appx. 686 (2d Cir. 2012) (where services agreement explicitly stated that parties were independent contractors, "this language precludes a finding of a fiduciary relationship.").

If TPC did not owe PetEdge a fiduciary duty, Garg did not owe PetEdge a fiduciary duty. "Under New York law there is no fiduciary duty owed … to the customers of a corporation by a controlling shareholder, officer, or director of a corporation."  *American Fin. Int'l Group-Asia LLC v. Bennett*, No. 05 Civ. 8988 (GEL), 2007 U.S. Dist. LEXIS 43508, at *14 (S.D.N.Y. June 14, 2007).  That is the case "[e]ven if such a relationship had existed between plaintiffs and [the officer's employer]."  *Id.* at *16.

To the extent that PetEdge is attempting to avoid the unambiguous contractual disclaimer by claiming that Garg breached his fiduciary duty *before* the parties entered into the Agreement (FAC ¶ 36), its argument fails because no duty was owed at that time.  *See, e.g.*, *Sveaas v. Christie's, Inc.*, No. 10 Civ. 4263 (LTS), 2011 U.S. Dist. LEXIS 49118, at *13 (S.D.N.Y. Apr. 20, 2011) ("Here, no facts are alleged demonstrating that, prior to the signing of the Agreement, Christie's assumed control and responsibility over Sveaas or assumed the obligation to act primarily for the benefit of Sveaas."), *aff'd*, 452 Fed. Appx. 63, 64 (2d Cir. 2011); *Frutico, S.A. v. Bankers Trust Co.*, 833 F. Supp. 288, 301 (S.D.N.Y. 1993) ("An agreement to enter into a joint venture must be finalized before a fiduciary duty is created.").

Again, the FAC does not allege that Garg communicated with PetEdge prior to the execution of the Agreement (or at any other time).  Nor does it not allege any prior relationship between PetEdge and Garg separate and apart from PetEdge's relationship with TPC that could possibly give rise to a fiduciary duty outside the scope of the Agreement.

### 2.   TPC's Expertise Does Not Create a Fiduciary Duty

Undaunted by New York precedent and the express terms of the Agreement, PetEdge alleges that its relationship with TPC "went beyond that of a mere buyer and seller," since TPC was aware that PetEdge was relying on it to "analyze PetEdge's needs, to advise PetEdge, and to recommend an appropriate implementation approach from the outset and throughout their dealings."  (FAC ¶ 36.)  It suggests this created a fiduciary duty on the part of TPC, and somehow by extension Garg.  But one party's superior expertise (or lack of expertise) does not create a fiduciary duty.

"Fiduciary duties do not arise solely because one party has expertise that is superior to another."  *Suthers v. Amgen Inc.*, 441 F. Supp. 2d 478, 486-87 (S.D.N.Y. 2006); *see also Boley v. Pineloch Assocs.*, 700 F. Supp. 673, 681 (S.D.N.Y. 1988) (holding that "allegations of reliance on another party with superior expertise, standing by themselves, will not suffice"); *Mechigian v. Art Capital Corp.*, 612 F. Supp. 1421, 1430 (S.D.N.Y. 1985) (finding that "plaintiff has provided no support for the proposition that mere expertise in a matter creates fiduciary responsibilities, which is essentially the sum and substance of his argument").

The First Amended Complaint itself makes clear that the relationship between TPC and PetEdge was *precisely* that of a mere buyer and seller.  PetEdge's claims of reliance on TPC's expertise before entering into the Agreement are undone by its allegation that two weeks before

-17-

the parties executed the Agreement, TPC's Brendon O'Malley and Mark Dooley met with TPC

"via telephone to aggressively sell TPC's consulting services to PetEdge."  (FAC ¶ 6.)

## V.   <u>CONCLUSION</u>

For the reasons set forth above, the First Amended Complaint should be dismissed with

prejudice.

**Dated:** New York, NY
         April 8, 2016

                              Respectfully submitted,

                              MANDEL BHANDARI LLP
                              80 Pine Street, 33rd Floor
                              New York, New York 10005
                              (212) 269-5600


                              By:   /s/ Evan Mandel
                                    _____
                                    Evan Mandel

                              *Attorneys for Defendant Vijay Garg*